IN RE Christina E. BUTLER,
Appellant–Debtor.

Christina E. Butler, Appellant–Debtor,

v.

OneWest Bank, FSB, a federally chartered savings bank; Mortgage Electronic Registration Systems, Inc., a Delaware Corporation; Northwest Trustee Services, Inc., a Washington Corporation and, Doe Defendants 1–10, Respondents–Defendants.

C14–1250Z

United States District Court,
W.D. Washington,
at Seattle.

Signed June 10, 2015

862

Richard Llewelyn Jones, Kovac & Jones, Bellevue, WA, for Appellant–Debtor.

Emilie K. Edling, Houser & Allison, APC, Portland, OR, Fred B. Burnside, Davis Wright Tremaine, Seattle, WA, Steven K. Linkon, Heidi Buck Morrison, RCO Legal, P.S., Bellevue, WA, for Respondents–Defendants.

### ORDER

Thomas S. Zilly, United States District Judge

Appellant has not made a payment toward her mortgage since December 2009. When non-judicial foreclosure proceedings were initiated, appellant filed for bankruptcy, thus halting the foreclosure. Before the bankruptcy court, appellant argued that the foreclosure should be enjoined and she should be awarded damages because, among other things, defendants allegedly violated the Washington Deed of Trust Act and Washington's Consumer Protection Act. The bankruptcy court rejected these, and appellant's other claims, and dismissed her suit with prejudice. Appellant now challenges these rulings. The Court finds that appellant's claims lack merit, thus the bankruptcy court is AFFIRMED and appellant's claims are DISMISSED.

### *Background*

#### A. The loan

Appellant executed a promissory note (the Note) for a loan from IndyMac Bank, F.S.B. (IndyMac) on or about April 27, 2007. Record on Appeal (ROA) Ex. 42, Ex. A. The Note was secured by a Deed of Trust on a property owned by appellant in Lynnwood, Washington. ROA Ex. 42, Ex. B. The Deed of Trust was recorded in Snohomish County and designates Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary. ROA Ex. 42, Ex. B at 1–2.

In May 2007, IndyMac sold appellant's loan to the Federal Home Loan Mortgage Corporation (Freddie Mac). ROA Ex. 42 ¶ 4. The Note was transferred into the possession of Freddie Mac's document custodian, Deutsche Bank National Trust Company (Deutsche Bank), on May 8, 2007. ROA Ex. 42 ¶¶ 2–4. Despite the sale of appellant's loan, IndyMac remained the loan servicer, acting on behalf of Freddie Mac. ROA Ex. 42 ¶ 4. In July 2008, however, IndyMac was deemed a failed financial institution and was placed into receiver-

ship. ROA Ex. 42 ¶ 5. The new entity, IndyMac Federal, continued servicing appellant's loan until March 19, 2009, when the Federal Deposit Insurance Company (FDIC) sold a substantial portion of Indy-Mac Federal, including the rights to service appellant's loan, to OneWest Bank, FSB (OneWest). ROA Ex. 42 ¶ 5. OneWest, therefore, became the servicer of appellant's loan on March 19, 2009, ROA Ex. 42 ¶ 5, and continued to be until August 15, 2013, when OneWest assigned the Deed of Trust to Ocwen Loan Servicing, LCC, ROA Ex. 55, Ex. A.[1]

At all material times, OneWest was subject to Freddie Mac's Single–Family Seller/Servicer Guide and Handbook (the Guide). Pursuant to the terms of the Guide, OneWest had the right to designate a document custodian or act as its own custodian. OneWest designated Deutsche Bank as the document custodian under this agreement, and on May 12, 2009, Freddie Mac, OneWest, and Deutsch Bank executed a Custodial Agreement. ROA Ex. 42, Ex. D. The agreement designates OneWest as the "Seller/Servicer" and Deutsche Bank as the "Custodian." ROA Ex. 42, Ex. D at 1. By its terms, the agreement states that the "Seller/Servicer [OneWest] shall hold in trust and for the sole benefit of Freddie Mac all Notes released to it." ROA Ex. 42, Ex. D at 6. The agreement also incorporates section 18.6 of Freddie Mac's Guide. ROA Ex. 42, Ex. D at 3. Section 18.6 of the Guide provides that the "Document Custodian [Deutsche Bank] will release to the Seller/Servicer [OneWest] any Note and related documents in the Document Custodian's custody." ROA Ex. 42, Ex. E at 19.

## B. Non-judicial foreclosure proceedings

In August 2009, appellant defaulted on her loan. ROA Ex. 42 ¶ 7. At the time of the proceedings before the bankruptcy court, appellant had stopped making payments toward her obligation, except for one payment in December 2009. ROA Ex. 42 ¶ 7. On November 4, 2009, OneWest executed a Beneficiary Declaration stating that it was the holder of appellant's Note. ROA Ex. 48, Ex. G. On November 10, 2009, MERS executed an Assignment of Deed of Trust, assigning the interest in the Deed of Trust to OneWest. ROA Ex. 27, Ex. I. On November 10, 2009, OneWest designated Northwest Trustee Services, Inc. (NWTS) as trustee of the Deed of Trust through the execution of an Appointment of Successor Trustee which indicated that OneWest was the beneficiary, owner, and holder of the Note. ROA Ex. 27, Ex. J. On December 11, 2009, NWTS issued a Notice of Default to appellant stating that OneWest was the owner and loan servicer of the Note, and the "creditor to whom the debt is owed[.]" ROA Ex. 27, Ex. L. The Notice of Default also indicated that it had been sent on behalf of OneWest "By Northwest Trustee Services, Inc., its duly authorized agent." ROA Ex. 27, Ex. L at 4.

A notice of Trustee's Sale was recorded by NWTS on January 22, 2010, which stat-

---

1. Appellant argues that she did not consent to have loan servicers or the separation of rights under the loan. She is wrong. Section 20 of the Deed of Trust expressly states that:

The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.

ROA Ex. 42, Ex. B at 11.

ed that the sale of appellant's property was scheduled for April 23, 2010, and identified OneWest as the beneficiary of the Note. ROA Ex. 27, Ex. N. In April 2010, appellant observed that Freddie Mac's website stated that Freddie Mac was the owner of her loan. ROA Ex. 48, Ex. O. Further, in response to an inquiry made by appellant, OneWest sent appellant a letter stating that Freddie Mac was the investor on her loan and that "IndyMac Mortgage Services, a division of OneWest Bank, FSB, is the servicer of your loan." ROA Ex. 48, Ex. Q.

The trustee's sale scheduled for April 23, 2010, did not occur and on July 1, 2010, appellant filed for Chapter 13 bankruptcy. *In re Butler*, No. 10–17669–KOA (W.D.Wash.Bankr. July 1, 2010). The case was converted into a Chapter 11 bankruptcy, *In re Butler*, No. 10–17669–KOA (W.D.Wash.Bankr. Aug. 25, 2010), and later dismissed on May 25, 2011, *In re Butler*, No. 10–17669–KOA (W.D.Wash.Bankr. May 25, 2011). Following dismissal of appellant's case, on June 24, 2011, NWTS recorded an Amended Notice of Trustee's Sale, noting that the sale had been rescheduled to July 29, 2011. ROA Ex. 27, Ex. R. However, this sale also never occurred because on July 28, 2011, appellant again filed for Chapter 11 bankruptcy, *In re Butler*, 512 B.R. 643 (W.D.Wash.Bankr. 2011), thus automatically staying foreclosure proceedings pursuant to 11 U.S.C. § 362.

### C. Proceedings before the bankruptcy court

On March 8, 2012, appellant initiated the adversarial matter presently before the Court, asserting claims for violation of the Washington Deed of Trust Act (DTA); wrongful foreclosure; abuse of civil process/procedure; violation of Washington's Consumer Protection Act (CPA); violation of the Fair Debt Collection Practices Act (FDCPA); and an action to quiet title. *In re Butler*, 512 B.R. 643 (W.D.Wash.Bankr. 2012). For these claims, appellant sought damages in an amount to be proven later, a declaration that appellees' actions violated the DTA, and a permanent injunction prohibiting appellees from conducting any foreclosure sale under the challenged Deed of Trust. *Id.* at 18. During the course of the proceedings before the bankruptcy court, appellant also added claims for irregularities in foreclosure proceedings, violation of the duty of good faith, and violation of Washington's Criminal Profiteering Act. *See* ROA Exs. 20.

Following protracted proceedings before the bankruptcy court, including three amended complaints and numerous motions to dismiss, motions for summary judgment, and motions for reconsideration, each of appellant's claims was eventually dismissed. *See* ROA Exs. 37, 61 & 83. The bankruptcy court entered judgment in favor of defendants on August 8, 2014. ROA Ex. 84.

### D. Appeal to the district court

On appeal from these rulings, appellant has identified 46 (56 if you count subparts) issues on appeal. ROA Ex. 92.

### Discussion

Appellant raised several claims below that the bankruptcy court deemed abandoned when appellant failed to defend them in opposition to defendants' motions for summary judgment. *See In re Butler*, 512 B.R. at 652 n. 2. Appellant's opening brief on appeal likewise fails to address a number of the claims that the bankruptcy court dismissed and numerous issues that she identified for appeal. Having reviewed all of appellant's claims, the Court finds that they lack merit and are dismissed.

## A. Evidentiary issues

■■■ Appellant argues that the bankruptcy court improperly considered several declarations submitted by defendants because, according to appellant, they do not meet the requirements for admission under Federal Rule of Civil Procedure 56(c). Specifically, appellant challenges that admissibility of the declarations of Charles Boyle, ROA Ex. 13 & 42, Barbara Campbell, ROA Ex. 43, Nicole Tollefson, ROA Ex. 65, and Jeff Stenman, ROA Ex. 66.[2] Appellant unsuccessfully raised the same argument below. *In re Butler*, 512 B.R. at 650–51. The bankruptcy court's ruling denying appellant's challenge to these declarations is evaluated under an "abuse of discretion" standard. *In re Healthcentral.com*, 504 F.3d 775, 783 (9th Cir.2007); *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993).

Rule 56(c) provides in relevant part that: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R.Civ.P. 54(c)(4). Appellant challenges these declarations on the grounds that they contain hearsay, the declarants lacked personal knowledge, and the declarants are incompetent to provide testimony. As these arguments lack merit, the bankruptcy court did not abuse its discretion in considering the declarations.

*First*, the declarations are adequately based on the declarants' personal knowledge. Each declaration not only swears that they have based their testimony on their personal knowledge, but provide the position they hold within their respective organizations and state what they have done to become familiar with the information they are providing.

With regard to Mr. Boyle and Mr. Stenman, appellant argues that their declarations should be rejected based on events that occurred in other cases. For instance, appellant cites a case in which the court, after conducting an evidentiary hearing, found that Mr. Boyle did not have personal knowledge for statements made in a declaration. *See McDonald v. OneWest Bank, FSB*, 929 F.Supp.2d 1079, 1089–92 (W.D.Wash.2013). The case at hand, however, differs in a significant respect from *McDonald*. In *McDonald*, the court noted that Mr. Boyle's declaration was replete with legal conclusions, inaccuracies, and was seemingly made in lieu of producing essential documents. *See id.* Mr. Boyle's declarations in the present case do not repeat these faults. Further, unlike *McDonald* where evidence had shown several of Mr. Boyle's statements to have been false, as the bankruptcy court noted in this case, "Plaintiff did not submit any evidence of her own to suggest that the facts offered by Boyle … were untrue, or to otherwise dispute [his] testimony." *In re Butler*, 512 B.R. at 650.[3]

2. Before the bankruptcy court, appellant also challenged the declaration of Cody Hoesly on the grounds that it was made without personal knowledge and was vague. *In re Butler*, 512 B.R. at 651. The bankruptcy court found that these concerns were rendered moot by Mr. Hoesly's supplemental declaration which "more than clarified for Plaintiff the matters she questioned." *Id.* Appellant has not challenged Mr. Hoesly's declaration on appeal.

3. Appellant makes a similar argument with regard to the declaration of Mr. Stenman. Without disclosing that the decision has been reversed, appellant cites *In re Meyer*, 506 B.R. 533 (Bankr.W.D.Wash.2014) *rev'd sub nom. Meyer v. U.S. Bank Nat. Ass'n*, 530 B.R. 767 (W.D.Wash.2015), for the proposition that Mr. Stenman's declaration should not be trusted because Northwest Trustee Services relies upon its "clients" for gathering information and did not have "procedures to verify the

*Second,* appellant argues that the challenged declarations should have been rejected because they offer only "rank hearsay." The bankruptcy court rejected appellant's argument, holding that the declarations fell within the hearsay exception for records of regularly conducted activities as provided by Federal Rule of Evidence 803(6). *In re Butler,* 512 B.R. at 650–51. As the bankruptcy court observed, the declarations of Mr. Boyle, Ms. Campbell, and Mr. Stenman track the requirements of Federal Rule of Evidence 803(6) and appellant has offered no evidence *from this case* to call into question their veracity. Accordingly, the bankruptcy court did not err in considering these declarations.

*Third,* appellant asserts, without explanation, that the declarants are incompetent to testify as to the matters contained in their declarations. The Court finds no basis for this contention, and concludes that the bankruptcy Court did not abuse its discretion rejecting this argument as well.

### B. Standard of Review

■ With regard to the bankruptcy court's grant of summary judgment, the Court reviews the bankruptcy court's findings of fact under the clear error standard and conclusions of law de novo. *Semel v. Dill (In re Dill),* 731 F.2d 629, 631 (9th Cir.1984). Because this is an appeal from the bankruptcy court's grant of summary judgment, the Court must determine whether summary judgment under Federal Rule of Civil Procedure 56 was appropriate. Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While "all justifiable inferences" are to be drawn in favor of the non-moving party, *id.* at 255, 106 S.Ct. 2505, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

### C. Washington Deed of Trust Act

■ The thrust of appellant's argument appears to be as follows: Under the DTA, only a "beneficiary" may declare an obligation in default or appoint a successor trustee. Appellant contends that pursuant to the DTA, to be a beneficiary, the entity must have physical possession of the promissory note. Appellant argues that because OneWest did not have physical possession of the promissory note, it violated the DTA when it executed a Beneficiary Declaration that identified it as the "actual holder" of appellant's Note and when it appointed NWTS as the successor trustee of appellant's Deed of Trust. Further, appellant appears to argue that NWTS violated the DTA and its duty of good faith when it executed and served a Notice of Default on appellant that identified OneWest as the beneficiary and actual holder of her Note. The bankruptcy court rejected

accuracy of the information[.]" *Id.* at 539. Appellant, however, makes no attempt to explain why this renders Mr. Stenman's decla- ration in this case inadmissible. Accordingly, the bankruptcy court did not err in considering it.

appellant's arguments and held that appellees had not violated the DTA.

Under the DTA, an entity may actually possess a note, and therefore qualify as a holder and beneficiary of that note, "either directly or through an agent." *McDonald,* 929 F.Supp.2d at 1088 n. 6 (citing *Bain v. Metropolitan Mortg. Group, Inc.,* 175 Wash.2d 83, 101, 106, 285 P.3d 34 (2012)). Accordingly, the Court must determine whether the bankruptcy court correctly found that Deutsche Bank, which physically possessed the Note, was an agent of OneWest. In Washington, "an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control." *Bain,* 175 Wash.2d at 106, 285 P.3d 34 (quoting *Moss v. Vadman,* 77 Wash.2d 396, 402–03, 463 P.2d 159 (1970)). As the bankruptcy court found, the relationship between Deutsche Bank and OneWest satisfied this test. As provided in the Custodial Agreement, Guide, and Handbook, OneWest had considerable control over Deutsche Bank's actions. OneWest chose and engaged Deutsche Bank to serve as document custodian, OneWest monitored and managed Deutsche Bank's actions, OneWest had the power to terminate Deutsche Bank as document custodian, and OneWest was responsible for paying Deutsche Bank for its services. With regard to the particular Note in this matter, OneWest could require Deutsche Bank to hand over the Note at its request pursuant to Guide § 18.6(e). Accordingly, as the bankruptcy court found, Deutsche Bank was the agent of OneWest. *See In re Butler,* 512 B.R. at 655. OneWest, therefore, had possession of the Note through its agent and was its holder[4] and beneficiary.

Appellant argued before the bankruptcy court that because OneWest was not the beneficiary of her Note, it violated RCW 61.24.020 by initiating non-judicial foreclosure proceedings against her. However, because OneWest was a beneficiary of her Note, no such violation occurred. The bankruptcy court also correctly rejected appellant's argument that OneWest violated RCW 61.24.010(2). RCW 61.24.010(2) provides that only a beneficiary may appoint a trustee or successor trustee. Because OneWest was the beneficiary of appellant's Note, it did not violate this section when it appointed NWTS as the successor trustee.

Appellant's claims against NWTS for violations of the DTA are also unfounded. Appellant argues that NWTS violated RCW 61.24.030(7), which provides certain requirements that must be met before a trustee's sale may be recorded. Among these is the requirement that the trustee "have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust" and that a declaration be made "by the beneficiary [ ] under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note[.]" RCW 61.24.030(7). Appellant argues that because OneWest was not the beneficiary, NWTS violated this section when it recorded the trustee's sale. However, be-

---

**4.** Appellant cites *Central Washington Bank v. Mendelson–Zeller, Inc.,* 113 Wash.2d 346, 779 P.2d 697 (1989), for the proposition that "[u]nder Washington law, a party who accepts an instrument as an agent for the owner cannot qualify as a "holder." Appellant's Opening Br. (docket no. 12) at 23 (quoting *Cent. Washington Bank,* 113 Wash.2d at 358, 779 P.2d 697). This case does not say that.

The section cited by appellant is clearly identified as addressing the issue of whether a party may become a "holder in due course" through an agent. *Cent. Washington Bank,* 113 Wash.2d at 358, 779 P.2d 697. As appellant's counsel surely knows, "holder in due course" is a term of art in the law with its own distinct meaning. *See* BLACK'S LAW DICTIONARY 732 (6th ed. 990).

cause OneWest was the beneficiary and actual holder, no such violation occurred and the bankruptcy court was correct to dismiss appellant's claim.

Appellant also argues that NWTS violated its duty of good faith by "relying upon documents it knew or should have known to be false and misleading[.]" Appellant's Opening Br. (docket no. 12) at 32. Specifically, appellant argues that NWTS should have questioned the documents it was receiving from OneWest, which she persists in identifying as an "ineligible 'beneficiary.'" For the reasons discussed above with regard to her other claims based on OneWest's status as the beneficiary of her Note, this argument also fails. NWTS did not violate its duty of good faith by relying on "false and misleading" documents because the documents were not false or misleading.

Appellant also argues that NWTS violated RCW 61.24.030(8)(*l*). This provision states that a notice of default must provide "the name and address of the owner of any promissory notes or other obligations secured by the deed of trust." RCW 61.24.030(8)(*l*). Appellant argues that because the notice stated that OneWest was the owner and provided OneWest's address, appellees violated this requirement. However, because OneWest was the beneficiary, holder, and owner under the DTA, as the bankruptcy court correctly held, the notice and Beneficiary Declaration satisfied the DTA's requirements. *See Trujillo v. Nw. Tr. Servs., Inc.*, 181 Wash.App. 484, 506, 326 P.3d 768 (2014), *review granted*, 182 Wash.2d 1020, 345 P.3d 784 (2015).

Appellant argues that NWTS improperly executed and notarized foreclosure documents. Specifically, appellant points to the fact that both notices were notarized one to two days after their "effective" date. *See* ROA 66, Exs. A & B. From this, appellant surmises that NWTS illegally "pre-date[ed]" the notices by executing them prior to having them notarized. There is no evidence this is the case. Instead, it appears that appellant has misunderstood the "effective" date of the notices to be the date they were executed. As appellees explained before the bankruptcy court, "[t]he effective date listed on the Notice of Trustee's Sale is not related to the execution date[.]" ROA 66 ¶¶ 8 & 11. Appellees also explained that the documents in question were executed on the day they were notarized, ROA 66 ¶¶ 10 & 12, and that "[i]t is NWTS's policy that all notarizations of documents occur upon their execution." ROA 66 ¶ 10.

For the foregoing reasons, the bankruptcy court correctly found that appellees did not violate the DTA.

### D. Washington Consumer Protection Act

■ The Washington Supreme Court recently held that a plaintiff may not recover damages under the DTA where no foreclosure sale has occurred. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash.2d 412, 334 P.3d 529 (2014). Damages for violations of the DTA where no sale has occurred may be recovered, however, through the CPA. *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wash.2d 775, 784, 336 P.3d 1142 (2014).

■ "To prevail on a CPA action, the plaintiff must show '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Id.* (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986)). "A claim under the CPA based on violations of the DTA must meet the same requirements applicable to any other CPA claim." *Lyons*, 181 Wash.2d at 785, 336 P.3d 1142.

■ Appellant argues that the improper assignment of her Note to OneWest and

OneWest's improper appointment of NWTS as successor trustee, "among other violations of the DTA ... constitute unfair and deceptive acts or practices." As the Court has noted above, however, the bankruptcy court correctly found that no violations of the DTA were committed. This being the case, and the Court finding no other colorable arguments that appellees engaged in unfair or deceptive trade practices, appellant has failed to satisfy the first prong the this test. Dismissal of this claim, therefore, is appropriate was well.

### E. No genuine issues of material fact exist

Appellant attempts to avoid summary judgment on several of these claims by asserting that many of the aforementioned facts have not been established such that no genuine issue of material fact exists. For instance, appellant contends that it is unclear which entity is the owner and holder of the Note. This argument, however, appears to merely be a restatement of appellant's arguments regarding OneWest's status under the DTA. As discussed above, there are no material issues as to these questions.

Next, appellant argues that there is no evidence that IndyMac ever sold her Note to Freddie Mac. This is of course not true. In his declaration, Charles Boyle stated that in "May 2007, IndyMac sold the loan to Freddie Mac[.]" ROA Ex. 42 ¶ 4. In response, appellant offers no evidence from this case to call this statement into question. Instead appellant notes that in a response to a request to the FDIC she made under the Freedom of Information Act in which she requested information regarding her loan, the FDIC stated that "[y]our loan was not owned by IndyMac at the time the FDIC was appointed as receiver." ROA Ex. 48, Ex. U. From this, appellant appears to conclude that there is no clear chain of ownership from IndyMac to Freddie Mac. This is not the case. As Mr. Boyle's declaration clearly states, the loan was sold by IndyMac to Freddie Mac in May 2007. It logically follows, therefore, that IndyMac did not own the loan when it was placed into receivership in March 2009.

Finally, appellant argues that there is a genuine issue of material fact because, according to her, there appear to be "two fully negotiable versions" of her Note. Appellant's Opening Br. (docket no. 12) at 26. As evidence of this, appellant states that there is a noticeable difference in the signatures of Samuel Lindstom on the copy of the Note included at ROA Ex. 13 and ROA Ex. 49, Ex. P. She is incorrect. These are simply two copies of the same document. There are no noticeable differences between them such that a reasonable person would think they are different documents.

### *Conclusion*

Because there are no genuine issues of material fact and the bankruptcy court's rulings of law and fact were correct, the bankruptcy court is AFFIRMED and appellant's suit is DISMISSED with prejudice.

IT IS SO ORDERED.