

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PAULINE LOUISE CONNER,

              Appellant,

v.

EVERHOME MORTGAGE COMPANY,
a division of EVERBANK, and
EVERBANK, REGIONAL TRUSTEE
SERVICES, MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., a/k/a MERSCORP,
FEDERAL NATIONAL MORTGAGE
ASSOCIATION, LENDER
PROCESSING SERVICES,
DOES I-XXX, INCLUSIVE,

              Respondents.

No. 74050-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 21, 2016

LEACH, J. — Pauline Conner challenges the summary judgment dismissal of her lawsuit against Everhome Mortgage Company (now EverBank),[1] Mortgage Electronic Registration Systems Inc. (MERS), and Federal National Mortgage Association (Fannie Mae). After Conner defaulted on a loan, EverBank started nonjudicial foreclosure proceedings against her home. Conner then filed a lawsuit asserting various causes of action based on alleged violations of the

---

[1] In July 2011, Everhome Mortgage Company merged with EverBank with the surviving successor being EverBank. Both names are used throughout the briefing and record, but the entities are the same for purposes of this dispute. For consistency with the trial court order, we use "EverBank."

deeds of trust act (DTA)[2] and Consumer Protection Act (CPA)[3]. She claims genuine issues of material fact prevent dismissal of these claims. She also challenges certain trial court evidence rulings and the denial of her request for a continuance of the summary judgment hearing.

Because Conner does not dispute that she defaulted on her loan and did not restrain the foreclosure sale, she fails to raise an issue of fact about her waiver of most of her DTA claims. Because the respondents did not owe Conner a duty of good faith, the trial court properly dismissed Conner's good faith claim against them. And because Conner does not provide facts to support the causation element of her CPA claim, the trial court properly dismissed the claim. For these reasons, we affirm.

## FACTS

In May 2006, Irwin Mortgage Corporation (IMC) loaned Pauline Conner $279,000 evidenced by a promissory note. A deed of trust (DOT) encumbering Conner's home secured the note. The DOT named MERS as its beneficiary. MERS never owned or possessed the promissory note.

IMC endorsed the note in blank and sold it to Fannie Mae. Fannie Mae delivered the note to EverBank to allow EverBank to service it for Fannie Mae. EverBank maintained continuous physical possession of the original note.

---

[2] Ch. 61.24 RCW.
[3] Ch. 19.86 RCW.

Conner defaulted on the loan in May 2009. EverBank notified Conner of her default and an imminent referral to foreclosure. Conner did not cure her default. On August 31, 2009, EverBank referred the loan for foreclosure.

In September 2009, MERS executed an assignment of the DOT, purporting to assign to EverBank all beneficial interest under the DOT.

On September 18, 2009, Regional Trustee Services sent Conner a notice of default, signed as "Trustee and/or Agent for the Beneficiary." EverBank appointed Regional Trustee as successor trustee, providing it with a notarized affidavit of possession indicating that EverBank possessed the note. On October 20, 2009, Regional Trustee recorded EverBank's appointment of successor trustee appointing Regional Trustee as successor trustee. The same day Regional Trustee also recorded a notice of trustee sale and sent it and a notice of foreclosure to Conner.

The notice of foreclosure scheduled a public action of Conner's home for January 22, 2010. Regional Trustee continued the sale to April 16, 2010. Conner did not attempt to enjoin the sale. Fannie Mae purchased the property at the April 16 trustee's sale. When Conner did not move out, Fannie Mae started an eviction action, which the court stayed pending the outcome of this lawsuit.

Conner filed this lawsuit on February 13, 2012, naming EverBank, Regional Trustee, MERS, and Fannie Mae as defendants. On July 9, 2015,

respondents EverBank, MERS, and Fannie Mae moved for summary judgment seeking dismissal of all claims against them. Regional Trustee had entered receivership and was not a party to the summary judgment proceeding. On August 4, 2015, Conner moved for a continuance to allow her to conduct discovery on specific questions related to ownership and possession of her promissory note. The trial court denied Conner's CR 56(f) motion and granted respondents' motion for summary judgment, dismissing all of Conner's claims. Conner appealed.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo.[4] Summary judgment is appropriate when, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[5] We consider the same evidence that the trial court considered on summary judgment.[6] But we may affirm the trial court ruling on any ground supported by the record.[7]

---

[4] Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 63-64, 1 P.3d 1167 (2000).

[5] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

[6] Lybbert, 141 Wn.2d at 34.

[7] King County v. Seawest Inv. Assocs., 141 Wn. App. 304, 310, 170 P.3d 53 (2007).

No. 74050-4-I / 5

ANALYSIS

*Declarations of Lee and Kaufman*

Conner asserts that the trial court should not have considered declarations and related business records about Regional Trustee and EverBank's actions in connection with the foreclosure. We review a trial court's decision to admit or exclude evidence in a summary judgment proceeding de novo.[8]

First, Conner contends that the declarations of Bradley Lee and Deborah Kaufman did not show that they had sufficient personal knowledge of the facts stated in the declarations. CR 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Declarations based on review of business records satisfy this personal knowledge requirement if the business records are admissible under RCW 5.45.020.[9] RCW 5.45.020 provides that a business record is admissible when

> the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

---

[8] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).
[9] Discover Bank v. Bridges, 154 Wn. App. 722, 726, 226 P.3d 191 (2010).

Courts interpret "custodian" and "other qualified witness" broadly.[10] The record need not be identified by the one who created it.[11] It must only be made "in the regular course of business, under circumstances which the court finds rendered it trustworthy."[12]

The declarations of Lee and Kaufman satisfy the personal knowledge requirement because they meet the requirements of CR 56(e) and RCW 5.45.020. We dealt with a similar challenge in Barkley v. GreenPoint Mortgage Funding, Inc.[13] Like the affiants in Barkley, Lee and Kaufman satisfied CR 56(e) and RCW 5.45.020 when they declared under penalty of perjury that (1) they were officers of EverBank and Regional Trustee, respectively, (2) they had personal knowledge of their companies' practices of maintaining business records, (3) their personal knowledge was based on examination of the records, and (4) the attached records were true and correct copies of records made in the regular course of business at or near the time of the transaction.[14]

Conner contends that the trial court improperly accepted these conclusory declarations of personal knowledge about the records' creation and contents. In

---

[10] State v. Ben-Neth, 34 Wn. App. 600, 603, 663 P.2d 156 (1983).
[11] Cantrill v. Am. Mail Line, Ltd., 42 Wn.2d 590, 608, 257 P.2d 179 (1953).
[12] State v. Rutherford, 66 Wn.2d 851, 853, 405 P.2d 719 (1965).
[13] 190 Wn. App. 58, 66-68, 358 P.3d 1204 (2015), review denied, 184 Wn.2d 1036 (2016).
[14] See Barkley, 190 Wn. App. at 67; see also Discover Bank, 154 Wn. App. at 726.

Barkley, we concluded that the trial court could properly consider "conclusory" declarations because the moving party had failed to identify any genuine issue of material fact about the affiants' qualifications.[15] Here, the trial court admitted that the declarations "tended to assert, without much more, that the affiant had personal knowledge, was familiar with the records, and that the records were prepared in the ordinary course of business." The trial court still considered the declarations, observing, like the court in Barkley, that Conner offered nothing to contradict the declarations. Given no reason to doubt their accuracy, the trial court, in its discretion, could properly find the declarations reliable enough to be considered.

Conner objects to Kaufman's reliance on the referral to foreclosure, sent by Lender Processing Services on behalf of EverBank. She contends that Kaufman improperly considered a document that contains hearsay and is from a third party. However, Kaufman used the document to show that Regional Trustee believed that it had received a referral to foreclosure from EverBank, which is precisely what the document conveys. Kaufman's reliance on the referral to foreclosure was proper.

Conner also claims that Kaufman's declaration is defective because it referred to an affidavit of possession that was not attached to it. "Sworn or

---

[15] Barkley, 190 Wn. App. at 67-68.

certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."[16] "However, evidence may be presented in affidavits by reference to other sworn statements in the record such as depositions and other affidavits."[17] Although the affidavit of possession was not attached to the Kaufman declaration, the respondents submitted two identical separate copies with the summary judgment motion. Conner contends that the trial court could not know whether Kaufman relied on that same document, but Conner bases this argument on pure speculation. Conner provides no reason to believe that Kaufman relied on a different document than the one provided to the court. Further, Conner did not ask the trial court to strike Kaufman's declaration for this reason and first raises it in this appeal. Had Conner objected to this alleged deficiency before resolution of the summary judgment motion, respondents could have easily cured it.[18] Conner's failure to object earlier waives her right to make this complaint on appeal.[19] The trial court properly considered the declarations of Lee and Kaufman.

---

[16] CR 56(e).

[17] Mostrom v. Pettibon, 25 Wn. App. 158, 162, 607 P.2d 864 (1980).

[18] See Meadows v. Grant's Auto Brokers, Inc., 71 Wn.2d 874, 881, 431 P.2d 216 (1967).

[19] See Meadows, 71 Wn.2d at 881.

*DTA Claims*

The trial court declined to consider Conner's DTA claims against the respondents, deciding that she had not pleaded them in her complaint.[20] The trial court was wrong. The allegations involving the DTA appear in Conner's first cause of action for "wrongful foreclosure." She based her wrongful foreclosure cause of action on claims of violations of chapter 61.24 RCW, Washington's deeds of trust act. The language of the complaint shows that alleged DTA violations provided the sole basis for Conner's wrongful foreclosure claim. For example, "Plaintiff alleges that Defendants are misrepresenting their right to enforce a debt and foreclose in violation of the statutory requirements of Washington RCW 61.24 *et seq.*" Conner also describes particular ways that DTA violations led to wrongful foreclosure. Because violations of the DTA were essential to Conner's wrongful foreclosure cause of action, the trial court erred in dismissing those claims on this basis. But we affirm dismissal of these claims because they were either waived or lack merit.

Conner waived her DTA claims against the respondents. A borrower's failure to enjoin a foreclosure before the trustee's sale may result in waiver of her claims under the statute.[21] This waiver may occur if the party "(1) received notice

---

[20] "While the plaintiff appears to have argued various alleged violations of the Deed of Trust Act, she never actually pleaded the violations as a cause of action."

[21] RCW 61.24.040(1)(f)(IX).

of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale."[22] This court applies waiver "where it is equitable under the circumstances and where it serves the goals of the act."[23] Thus, to decide if waiver is proper, courts examine whether interested parties had an adequate opportunity to prevent wrongful foreclosure.[24] Also, failure to bring an action to enjoin foreclosure does not waive claims asserting "(a) [c]ommon law fraud or misrepresentation; (b) [a] violation of Title 19 RCW; (c) [f]ailure of the trustee to materially comply with the provisions of this chapter; or (d) [a] violation of RCW 61.24.026."[25]

Here, Conner makes no claim that she did not receive notice of her right to enjoin the sale or that she did not know of the foreclosure sale. Nor does she claim that she attempted to enjoin the sale. Conner had ample opportunity to challenge the sale. All allegedly wrongful actions occurred on or before October 20, 2009. She knew or should have known about them, and the sale did not take place until April 2010. Thus, waiver is equitable here. We therefore find that

---

[22] Plein v. Lackey, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003).
[23] Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 570, 276 P.3d 1277 (2012).
[24] Albice, 174 Wn.2d at 571.
[25] RCW 61.24.127(1).

under RCW 61.24.127(1), Conner waived all but her CPA claims and her good faith claim against the trustee.[26]

*Good Faith Claim*

The trial court correctly dismissed Conner's good faith claim. Conner claims that Regional Trustee violated its duty of good faith by failing to properly investigate information it relied upon to initiate foreclosure. A trustee owes a duty to act in good faith with impartiality to both lenders and borrowers.[27] But the trial court properly dismissed this claim because the trustee, Regional Trustee, was not a party to the summary judgment motion asking for dismissal of this claim and none of the respondents owed Conner a duty of good faith.

Conner claims that EverBank is vicariously liable for Regional Trustee's actions under the doctrine of respondeat superior. The respondeat superior doctrine makes a principal liable for its agent's wrongful acts committed within the scope of the agency.[28] Generally, "'a trustee is not merely an agent for the lender or the lender's successors. Trustees have obligations to all of the parties

---

[26] Conner argues that EverBank fraudulently advised her that making two months of payments would avoid foreclosure and Regional Trustee falsely indicated the number of Conner's delinquent payments. Although common law fraud is one of the exceptions to waiver under RCW 61.24.127(1), Conner offers no authority to support her fraud claims. Further, she did not raise this issue until appeal. We therefore decline to address her arguments about the fraud claim.

[27] RCW 61.24.010(4); Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 787, 336 P.3d 1142 (2014).

[28] BLACK'S LAW DICTIONARY 1505 (10th ed. 2014).

to the deed, including the homeowner.'"[29] However, "[w]here the beneficiary so controls the trustee so as to make the trustee a mere agent of the beneficiary, then as princip[al], the beneficiary may be liable for the actions of its agent."[30] Here, Conner asserts that Regional Trustee was a mere agent of EverBank because EverBank controlled the transaction by its authority to start and stop the foreclosure. Assuming this is true, Conner still did not present any evidence showing that EverBank exercised an improper degree of control over Regional Trustee. Because Conner does not show that EverBank improperly controlled Regional Trustee, her proposition that Regional Trustee acted as EverBank's agent fails.

Similarly, Conner's argument that Regional Trustee and EverBank should be held jointly and severally liable under theories of civil conspiracy and joint venture liability also fails. Conner cites no authority applying these theories in deed of trust cases. Further, Conner offers no evidence to justify their application in this case. To prove civil conspiracy, a plaintiff must show that each participant combined to accomplish an unlawful purpose or a lawful purpose by unlawful means.[31] To establish joint venture liability, a plaintiff must show a

---

[29] Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 789, 295 P.3d 1179 (2013) (quoting Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 93, 285 P.3d 34 (2012)).
[30] Klem, 176 Wn.2d at 791 n.12.
[31] Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 160, 52 P.3d 30 (2002).

contract, a common purpose, a community of interest, and equal right to a voice and control.[32] Conner offers no evidence that EverBank had a common objective with Regional Trustee, lawful or otherwise. Because the respondents have no liability for Regional Trustee's actions, we decline to consider Conner's claims based on Regional Trustee's violation of its duty as trustee. Because the respondents have no primary or vicarious liability, we affirm dismissal of Conner's good faith claim.

*CPA Claims*

Next, we address Conner's CPA claims. The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[33] To prevail on a CPA claim, the plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury.[34]

Conner claims deceptive practices by Regional Trustee, EverBank, and MERS caused her injury. Specifically, Conner bases her CPA claim on MERS's improper assignment of the DOT and on violations of the DTA, including

---

[32] Knisely v. Burke Concrete Accessories, Inc., 2 Wn. App. 533, 537, 468 P.2d 717 (1970) (quoting Carboneau v. Peterson, 1 Wn.2d 347, 374, 95 P.2d 1043 (1939)).

[33] RCW 19.86.020.

[34] Klem, 176 Wn.2d at 782 (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

EverBank's allegedly improper appointment of Regional Trustee, and various violations of the DTA by Regional Trustee. Because Regional Trustee was not involved in the summary judgment motion and is not a party to this appeal, we do not consider CPA claims based on Regional Trustee's alleged DTA violations.

As an initial matter, the respondents incorrectly assert that the statute of limitations bars Conner's MERS-based CPA claim. A litigant must commence a CPA action within four years from the date that cause of action accrues.[35] A CPA claim begins to accrue when, with the exercise of due diligence, the claimant should have discovered the basis for the cause of action.[36] The events on which Conner bases her CPA claim occurred in late 2009 in connection with foreclosure on her property. Conner sued in February 2012, well within the four-year period for bringing a CPA claim.

Because the causation element of the CPA claim is dispositive, we focus exclusively on it. Conner identified her injuries as the loss of her home and the expenses she incurred seeking legal help to determine ownership of her note.[37]

---

[35] RCW 19.86.120.

[36] See Shepard v. Holmes, 185 Wn. App. 730, 739, 345 P.3d 786 (2014); Mayer v. Sto Indus., Inc., 123 Wn. App. 443, 462-63, 98 P.3d 116 (2004), rev'd in part on other grounds, 156 Wn.2d 677, 132 P.3d 115 (2006).

[37] See Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 62, 204 P.3d 885 (2009) ("Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim. Although the latter is insufficient to show injury to business or property, the former is not." (citation omitted)).

But Conner fails to show that either MERS's DOT assignment or EverBank's appointment of successor trustee caused these injuries. First, Connor does not show that EverBank relied on MERS's assignment of the DOT for its authority to foreclose or appoint a successor trustee. Also, she does not dispute that she failed to meet her debt obligations and cure her default despite receiving notice of foreclosure. The record contains no evidence that the alleged deceptive acts of the respondents caused Conner's default or failure to cure. Thus, Conner cannot show that but for alleged deceptive acts, EverBank would not have foreclosed on her home.

Nor does Conner show how the alleged deceptive acts caused Conner to incur legal expenses. Neither the MERS assignment nor the appointment of successor trustee had any effect on who was the owner or holder of the note. Thus, these acts did not cause Conner to investigate ownership. Conner failed to demonstrate a genuine issue of material fact that the MERS assignment of the DOT, EverBank's appointment of trustee, or any other allegedly improper action by the respondents caused her injury. Because Conner does not raise facts to show a causal link between the alleged deceptive acts and her injury, we do not address whether she has established the other elements of her CPA claim.

Conner has failed to produce any evidence supporting an essential element of her CPA claim. We affirm dismissal of this claim.

*CR 56(f) Continuance*

The trial court properly denied Conner's request for a continuance under CR 56(f). Before oral argument on the respondents' summary judgment motion, Conner requested a continuance to conduct discovery on certain questions. Finding those questions were immaterial to the issues before it, the trial court denied the request. A trial court may deny a CR 56(f) continuance for a number of reasons: "(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) *the requesting party does not state what evidence would be established through the additional discovery*; or (3) the desired evidence will not raise a genuine issue of material fact."[38] An appellate court will affirm a trial court's decision to deny a CR 56(f) motion absent a showing of manifest abuse of discretion.[39]

Here, the evidence Conner sought would not have created an issue of fact. Conner asserts material issues of fact exist about EverBank's status as "actual holder" of the note with authority to foreclose. Conner moved for a CR 56(f) continuance for the purpose of conducting discovery on this question. Specifically, Conner planned to request information on the date parties acquired ownership of the note and DOT; the amount, form, and source of consideration

---

[38] Baechler v. Beaunaux, 167 Wn. App. 128, 132, 272 P.3d 277 (2012) (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

[39] Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 183, 313 P.3d 408 (2013).

paid for the note and DOT; the date consideration was paid; and the identity of the agents involved. The trial court denied the CR 56(f) motion, concluding that none of Conner's requested discovery was material to the summary judgment issues.

Conner claims that whether EverBank or Fannie Mae was the owner and holder of the note is disputed. But any evidence Conner hoped to obtain about ownership or possession would not have changed the outcome here. First, ownership is not relevant to ability to enforce and is, thus, not material.[40] Second, possession is the only salient fact for determining the "actual holder."[41] Undisputed evidence shows that EverBank was the holder of the note. Conner does not provide any reason to believe that more discovery would uncover evidence showing otherwise. And if such evidence existed, Conner does not explain why she did not have sufficient time to discover it earlier in the litigation.

Conner asserts that she needed additional time to conduct discovery because the respondents did not answer her amended complaint until a month before the hearing on summary judgment. But Conner had three years for discovery. The respondents' delay in filing their answer does not excuse Conner's failure to conduct discovery on this issue.

---

[40] See Trujillo v. Nw. Tr. Servs., Inc., 181 Wn. App. 484, 500, 326 P.3d 768 (2014), rev'd on other grounds, 183 Wn.2d 820, 355 P.3d 1100 (2015).
[41] Trujillo, 181 Wn. App. at 498.

Conner did not identify any evidence that she might obtain through discovery that would raise a material issue of fact. The trial court did not abuse its discretion by denying Conner's CR 56(f) motion.

*Attorney Fees*

Conner requests attorney fees under both RAP 18.1 and the terms of the DOT. Because she does not prevail on any issue, we deny her request.

CONCLUSION

Because the undisputed facts show that Conner waived her DTA claims, except the good faith claim against the trustee, the trial court properly dismissed those claims. Because the respondents did not owe Conner a duty of good faith, the trial court properly dismissed Conner's good faith claim against them. And because Conner does not provide facts to support the causation element of her CPA claim, the trial court properly dismissed that claim as well. We affirm.

_Leach, J._

WE CONCUR:

_Cox, J._

_Becker, J._