# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

HOWARD and BEATRICE SEELIG,
a marital community,

        Appellants,

v.

308 FOURTH AVENUE SOUTH
JOINT VENTURE, a New York
general partnership, ORT
DOWNTOWNER, LLC, a general
partner, MARTIN A. SEELIG, a
general partner, MICHELLE SEELIG
TRUST, a general partner, RACHEL
SEELIG TRUST, a general partner,
JENNIFER H. SEELIG, a general
partner, LAURA S. STRICKLAND,
a general partner, MARK E.
STRICKLAND, a general partner,
GOLDSCHMIDT FAMILY TRUST, a
general partner, LAWRENCE E.
GOLDSCHMIDT, a general partner,
ELLEN C. GOLDSCHMIDT, a general
partner, JULIET S. AMES GRANTOR
TRUST, a general partner,
ALEXANDER K. AMES GRANTOR
TRUST, a general partner, SAMANTHA
WINSLOW GRANTOR TRUST, a
general partner, JESSIE WINSLOW
GRANTOR TRUST, a general partner,
MARGARET S. LARKIN TRUST, a
general partner, MATTHEW S.
LARKIN GRANTOR TRUST, a
general partner, MICHELLE C.
KORNBLAU GRANTOR TRUST, a

No. 78716-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 28, 2019

No. 78716-1-I / 2

general partner, JOEL B. )
KORNBLAU GRANTOR TRUST, a )
general partner, )
                                              )
          Respondents. )
_____)

LEACH, J. — Howard Seelig appeals the trial court's summary judgment dismissal of his lawsuit against 308 Fourth Avenue South Joint Venture ("Joint Venture"). First, he claims that he raised genuine issues of material fact about whether he was an employee of Joint Venture and whether he rendered real estate brokerage services to Joint Venture. Next, he claims that he was entitled to a continuance to conduct discovery under CR 56(f) because he identified a supposed agreement that, if found, would show Joint Venture promised in writing to compensate him for managerial efforts.

The services that Seelig rendered for the Joint Venture are not exempt from the licensing requirement. So no genuine issues of material fact exist regarding Seelig's claim for additional compensation for management services. Seelig also fails to establish that the trial court abused its discretion by denying his request for a continuance for discovery.

We affirm.

FACTS

Howard Seelig and several others formed Joint Venture in 1970 to purchase, rehabilitate, and operate a large apartment project in Seattle, the

-2-

Downtowner Apartments. The Joint Venture partnership agreement stated that Seelig and his brother, Martin Seelig, would manage the Downtowner.

The Downtowner was a low-income apartment building operated under Federal Housing Authority regulations. In his February 17, 2015, declaration, Seelig describes the services for which he seeks additional compensation. He agrees that he received compensation for management services during his tenure with the property but contends that Joint Venture owes him more.

In 2004, Seelig conveyed his ownership interest in Joint Venture to others but continued as its manager. He managed the Downtowner until September 2011. Joint Venture sold the Downtowner in 2012.

Seelig sued for breach of contract after the building was sold. His complaint states only a claim for additional compensation for unpaid management services for the Downtowner, but the record established an unpleaded claim for a bonus due on the sale of the Downtowner. Joint Venture asked the court to dismiss both claims on summary judgment. The trial court granted this request. Seelig appealed this decision.[1] This court affirmed the

---

[1] Seelig claimed on his first appeal that the trial court erred in granting summary judgment because (1) there were genuine issues of material fact whether he was entitled to a bonus when Joint Venture sold the Downtowner, (2) there were genuine issues of material fact whether Joint Venture terminated him in bad faith, and, of relevance in this appeal, (3) the trial court erred in granting summary judgment on his claim for additional compensation for management services. Seelig v. 308 Fourth Ave. S. Joint Venture, No. 75777-6-I, slip op.

No. 78716-1-I / 4

dismissal of the bonus claim but reversed dismissal of the additional management services compensation claim.[2]

After remand, Joint Venture renewed its request for summary judgment. Seelig asked the trial court to continue Joint Venture's request to allow him to conduct additional discovery about a supposed signed agreement for additional compensation that Seelig was unable to confirm exists. The trial court granted summary judgment dismissing Seelig's remaining claim, noting how Seelig cannot "come within any of the exceptions to the statute on the licensing." Seelig appeals.

ANALYSIS

Motion for Summary Judgment

*Employee Exemption*

Seelig claims that the record shows genuine issues of material fact exist about whether Seelig was an employee of Joint Venture and, thus, exempt from any licensing requirement.

This court reviews an order granting summary judgment de novo.[3] Summary judgment is appropriate when, viewing all facts and reasonable

_____

(Wash. Ct. App. Dec. 18, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/757776.pdf.

[2] The respondents incorrectly quoted RCW 18.85.331, the statute central to its argument on the management services claim. This court vacated the summary judgment on this claim and remanded for proceedings without ruling on the merits of the claim. Seelig, No. 75777-6-I, slip op. at 8.

-4-

inferences in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[4] We consider the same evidence that the trial court considered.[5]

In his complaint, Seelig sought compensation for his services rendered as manager of the Downtowner. RCW 18.85.331 prohibits a person from performing real estate brokerage tasks without a license.[6] It also prohibits a person from bringing suit to collect compensation as a real estate broker without a broker's license.[7] A person performs real estate brokerage services by "[n]egotiating or offering to negotiate, either directly or indirectly, the purchase, sale, exchange, lease, or rental of real estate, or any real property interest therein."[8]

Seelig admitted in his declaration that he "negotiated a deal with Goodman Real Estate to purchase the Downtowner for $16 million . . . but [the deal] fell through" and that he claimed additional compensation in part due to "his efforts in facilitating a sale transaction of the Downtowner Apartments." He also stated that he "[set] up [the] purchase of the property." Because Seelig

---

[3] Hayden v. Mut. of Enumclaw Ins. Co., 141 Wn.2d 55, 63-64, 1 P.3d 1167 (2000).
[4] Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).
[5] Lybbert, 141 Wn.2d at 34.
[6] RCW 18.85.331.
[7] RCW 18.85.331.
[8] RCW 18.85.011(17)(b).

negotiated the purchase of real property, the services that he provided were real estate brokerage services, which require a license.

So Seelig would need to be exempt from the broker's license requirement in order to be compensated in this case. He claims he is exempt under RCW 18.85.151(1), which exempts "[a]ny person who purchases or disposes of property . . . and their employees" from needing a license.[9] He states in his brief,

> [I]f Seelig was an employee of the Joint Venture at the time the Joint Venture promised to pay him management compensation and a bonus when the Downtowner was sold, then he was exempt from the licensing requirement. Whether Seelig was an employee of the Joint Venture at the time the Joint Venture promised to pay him management compensation and the bonus is a genuine issue of material fact.

But Seelig's status as an employee of Joint Venture when the supposed agreement for management compensation was made is not relevant. The statute exempts people who buy or sell real property and their employees; it does not provide a continuing exemption for a person who may have been an employee when a compensation agreement was made but stops being an employee before any sale occurs, as Seelig suggests.

Seelig admits he was not an employee of Joint Venture when it sold the Downtowner. Thus, even if he ever was an employee of Joint Venture, he agrees that he was not an employee when Joint Venture "purchase[d] or

---

[9] RCW 18.85.151(1). In this case, the licensing exemptions refer to a real estate broker's license.

dispose[d] of [the] property."[10]   Since Seelig's employment status with Joint Venture when it sold the building is the relevant question, no genuine issues of material fact exist as to whether Seelig was an employee of Joint Venture at the relevant time.

### Brokerage Services

Seelig also argues that the record shows genuine issues of material fact about whether Seelig rendered exempt real estate brokerage services to Joint Venture.  He claims his activities as property manager fell "squarely" within the licensing exemption provided in RCW 18.85.151(13).  Joint Venture claims that his activities do not fit within this exemption because he admittedly engaged in real estate brokerage services beyond those described in this exemption.

RCW 18.85.151(13) exempts from the licensing requirement individuals who are "limited in property management" to any of the following activities:

> (a) Delivering a lease application, a lease, or any amendment thereof to any person;

> (b) Receiving a lease application, lease, or amendment thereof, a security deposit, rental payment, or any related payment for delivery to and made payable to the real estate firm or owner;

> (c) Showing a rental unit to any person, or executing leases or rental agreements, and the employee or retainee is acting under the direct instruction of the owner or designated or managing broker;

---

[10] Respondents failed to raise this issue in their briefing and instead argued that Seelig was never an employee.

(d) Providing information about a rental unit, a lease, an application for lease, or a security deposit and rental amounts to any prospective tenant; or

(e) Assisting in the performance of property management functions by carrying out administrative, clerical, financial, or maintenance tasks.

Seelig admitted that the various tasks for which he seeks compensation included negotiating a deal for the Downtowner, facilitating a sale transaction for the Downtowner, negotiating about and then leasing and renting the Downtowner, advertising and consulting with potential buyers, marketing the property, ensuring the property was in compliance with federal regulations, resolving legal complaints for the property, and preparing tax returns. He also admitted in his declaration that his "primary role was that of the Joint Venture's chief executive officer (CEO) and chief financial officer (CFO)."

So undisputed facts in the record show that Seelig's activities were not limited to those described in RCW 18.85.151(13). He does not fit within the exemption. Also, these additional tasks that Seelig performed include real estate brokerage services.[11] No genuine issues of material fact exist as to whether Seelig rendered real estate brokerage services beyond the property management activities listed in RCW 18.85.151(13). The trial court did not err by granting summary judgment to Joint Venture.

---

[11] RCW 18.85.011(17)(b).

-8-

CR 56(f) Continuance

Seelig asserts that the trial court should have granted his request for a continuance for discovery under CR 56(f).

A trial court may deny a CR 56(f) continuance request for a number of reasons: "'(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'"[12] We will affirm a trial court's decision to deny a CR 56(f) motion absent a showing of manifest abuse of discretion.[13]

Here, Seelig claims he was entitled to conduct discovery to find a "written agreement to pay compensation and/or additional compensation to him." The alleged written agreement purported to compensate Seelig for his "services rendered as the manager of the [b]uilding." Seelig's "services rendered as the manager" include real estate brokerage services, as described above. So any search for an agreement for management services is fruitless. Even if Seelig finds this supposed written agreement through discovery, that agreement would provide for compensation for service that included brokerage services, Seelig

---

[12] Baechler v. Beaunaux, 167 Wn. App. 128, 132, 272 P.3d 277 (2012) (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

[13] Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 183, 313 P.3d 408 (2013).

does not have a broker's license, a person cannot sue for compensation for brokerage services without a license, and Seelig's activities are not exempt from the licensing requirement.

Seelig did not identify any evidence that he might obtain through discovery that would raise a genuine issue of material fact. The trial court did not abuse its discretion in denying Seelig's CR 56(f) motion.

Seelig also states that he should be entitled to a continuance for discovery because "[i]f the [a]greement does not exist, then Goldschmidt may have perpetrated an elaborate fraud on Seelig by misrepresenting that the [a]greement had been signed by the Joint Venture." However, Seelig did not plead a claim for fraud or misrepresentation in his original complaint. So the trial court did not abuse its discretion in denying Seelig's CR 56(f) motion.

### Attorney Fees

Joint Venture requests an award of attorney fees and costs pursuant to RAP 14.1 and RAP 18.9(a), claiming that Seelig's appeal is frivolous. We disagree.

RAP 18.9(a) permits the court to require a party to pay the fees and costs of another party for defending a frivolous appeal.[14] "'An appeal is frivolous if it raises no debatable issues on which reasonable minds might differ and it is so

---

[14] Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d 1 (2009).

totally devoid of merit that no reasonable possibility of reversal exists.'"[15]   An appellate court resolves any doubts about whether the appeal is frivolous in favor of the appellant.[16]

Joint Venture argues that Seelig's arguments are "belied by the rules of procedure, the plain language of a state statute, and uniform case law." It claims that Seelig has presented no debatable issues or close questions.

While Seelig's arguments do not persuade this court, an appeal is not frivolous merely because it is unsuccessful.[17]   And this court reaches for the first time the merits of an issue that Seelig raised in his first appeal.

For these reasons, we deny the request for fees and costs.

## CONCLUSION

We affirm.  Because Seelig admitted that he was not an employee of Joint Venture when it sold the Downtowner, no genuine issue of material fact exists about whether Seelig was an employee of Joint Venture at any relevant time. Additionally, Seelig admitted to performing services that do not qualify him under the licensing requirement exemption. No genuine issue of material fact exists about whether Seelig rendered real estate brokerage services to Joint Venture.

---

[15] Hernandez v. Stender, 182 Wn. App. 52, 61, 358 P.3d 1169 (2014) (quoting Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 220, 304 P.3d 914 (2013)).
[16] Protect the Peninsula's Future, 175 Wn. App. at 220.
[17] Protect the Peninsula's Future, 175 Wn. App. at 220.

Finally, because Seelig did not identify any evidence that would entitle him to an exemption from the licensing requirement, the trial court did not abuse its discretion in denying his CR 56(f) motion. We deny Joint Venture's requests for attorney fees and costs.

_Leach, J._

WE CONCUR:

_Mann, ACJ_

_Dwyer, J._